UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-23516-CIV-MORENO

ROBERT D. KORNAGAY,

    Plaintiff,

vs.

WARDEN ACOSTA, et al.,

    Defendants.
_____/

## ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM

### I. Introduction

Robert D. Kornagay—a *pro se* Plaintiff—filed this civil rights action under 42 U.S.C. § 1983 to recover for injuries suffered when fellow inmates attacked him in the prison yard at Everglades Correctional Institution. Because Kornagay is a prisoner seeking redress against governmental employees or officers, his pleadings are subject to screening under 28 U.S.C. § 1915A. For the reasons discussed below, the Court finds that Kornagay's Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Accordingly, it is ADJUDGED that the Complaint is DISMISSED.

### II. Statement of Facts

Kornagay alleges that on December 6, 2016, he was suddenly attacked when he unknowingly walked into a "blind spot"—*i.e.* an unguarded and unmonitored area of the prison yard. Describing the attack, Kornagay states that a group of approximately five other inmates rushed him from behind, knocked him to the ground, stabbed him in the head, and then robbed him of his personal belongings. He contends that the incident caused excruciating pain, noting that he incurred a head wound requiring nine stiches, and that he continues to suffer from blurred vision

and headaches. In addition to those physical injuries, Kornagay claims that he suffers from mental and emotional distress, sleeplessness, embarrassment, and paranoia as a result of the attack.

Kornagay alleges that the Defendants—Warden Acosta and Captain Lovett—are responsible for his injuries because they failed to take reasonable measures to remedy the risk of harm caused by the blind spot. He contends that both Defendants were employed at Everglades Correctional Institution, and that, prior to this incident, they were made aware of the blind spot on the jogging track and knew it created a substantial risk of serious injury. According to Kornagay, "Prior to December 6, 2016 . . . a large number of assaults, robberies, and stabbings [] took place in this particular area on a frequent basis." (Compl. ¶ 8.) He argues that Defendants acted with deliberate indifference to his safety by failing to "develop any methods to curb the violence," such as (i) "placing monitor devices in this high-risk area," (ii) "providing adequate security on the recreation yard," or (iii) "putting up a fence blocking off this high-risk area." (*Id.* ¶ 10.) He seeks compensatory, nominal, and punitive damages.

### III. <u>Legal Standards</u>

#### A. *Motion to Dismiss*

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely

allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

Pleadings by *pro se* plaintiffs, however, are held to a less stringent standard and will be liberally construed. *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998).

## B. *Civil Rights Claims Under 42 U.S.C. § 1983*

"Substantively, '[t]o prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law.'" *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir. 1998)). The Eighth Amendment of the United States Constitution—which is applicable to the states through the Fourteenth Amendment—forbids "cruel and unusual punishments." U.S. Const. amend. VIII. The Eleventh Circuit has interpreted this to include prisoners' claims for deliberate indifference to a substantial risk of serious harm. *See, e.g., Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014).

## C. *Deliberate Indifference to a Substantial Risk of Serious Harm*

The Court must decide whether Kornagay's Complaint alleges sufficient facts that—if true—would establish each element of a deliberate indifference claim. To establish an Eighth Amendment claim of deliberate indifference, a plaintiff must allege facts sufficient to show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Lane v. Philbin,* 835 F.3d 1302, 1307 (11th Cir. 2016) (citing *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995)).

The Eighth Amendment requires that prison officials take reasonable measures to promote inmates' safety. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014). "Having incarcerated 'persons with demonstrated proclivities for antisocial criminal, and often violent conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature

take its course." *Estate of Owens v. GEO Group, Inc.*, 660 Fed. App'x. 763, 766–68 (11th Cir. 2016).

However, the Eighth Amendment's "reasonable measures" standard does not obligate prison officials to prevent all violence. "In a jail setting, a risk of harm to some degree always exists by the nature of its being a jail." *Purcell v. Toombs County*, 400 F.3d 1313, 1321 (11th Cir. 2005). Thus, while prison officials must take reasonable steps to remedy a *substantial risk of serious harm*, "a prison custodian is not the guarantor of a prisoner's safety." *Id.*

## IV. <u>Analysis</u>

In his Complaint, Kornagay states that a "large number of assaults, robberies, and stabbings [] took place in this particular area on a frequent basis." (Compl. ¶ 8.) He contends that the Defendants knew the blind spot presented a pervasive risk of harm based on "documents," "reports," and "complaints of other prisoners" about the violence in this particular area. Therefore, he argues that Defendants acted with deliberate indifference to his safety by failing to "develop any methods to curb the violence," such as (i) "placing monitor devices in this high risk area," (ii) "providing adequate security on the recreation yard," or (iii) "putting up a fence blocking off this high-risk area." (Compl. ¶ 10.) Kornagay claims that the attack and his injuries resulted from this deliberate indifference.

These allegations fail to state a claim because they do not establish a substantial risk of serious harm. Even if they did, Kornagay still fails to show that Defendants were deliberately indifferent to that risk.

### A. *Substantial Risk of Harm*

In the Eleventh Circuit, "[a]n *excessive* risk of inmate-on-inmate violence creates a substantial risk of serious harm, but occasional, isolated attacks by one prisoner on another may not constitute an Eighth Amendment violation. *Oliver v. Harden*, 587 F. App'x 618, 620 (11th Cir. 2014) (citing *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)). The risk of violence is excessive if "inmates [are] exposed to the constant threat of violence." *Id.*

4

Here, Kornagay's allegations do not portray a "prison where violence and terror reign." *Purcell v. Toombs County*, 400 F.3d at 1320 ("[C]onfinement in a prison where violence and terror reign is actionable."). Nor do they suggest that inmate-on-inmate violence was so prevalent that "inmates were exposed to the *constant* threat of violence." *Oliver*, 587 F. App'x at 620 (emphasis added). At best, his conclusory assertion that there were a "large number of assaults, robberies, and stabbings that took place in this particular area on a frequent basis" suggests "the mere possibility" of injury, but fails to establish the "strong likelihood of injury" necessary to state a claim. *Estate of Owens*, 660 Fed. App'x. at 766.

**B.** *Deliberate Indifference*

Even assuming Kornagay's Complaint established a substantial risk of serious harm, he still fails to state a claim because his allegations do not show that Defendants acted with a "sufficiently culpable state of mind"—*i.e.*, deliberate indifference to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is defined as a state of mind more blameworthy than mere negligence or even gross negligence; it requires a showing of conscious or callous indifference to an inmate's rights. *Davidson v. Cannon*, 474 U.S. 344 (1976).

Nothing in Kornagay's Complaint suggests that Defendants acted with conscious and callous indifference. His relevant allegations—that Defendants failed to "develop any methods to curb the violence," such as (i) "placing monitor devices in this high risk area," (ii) "providing adequate security on the recreation yard," or (iii) "putting up a fence blocking off this high-risk area"—reflect, at worst, negligent conduct. They by no means indicate that Defendants "disregard[ed] [a] known risk by failing to respond to it in an (objectively) reasonable manner." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007); *see also, Harrison*, 746 F.3d at 1294 (allegations that "(1) [prison guards] failed to provide adequate security on the back hall and (2) [prison guards] failed to implement and enforce a policy to ensure that inmates could not possess a box cutter or utility knife outside of the hobby shop" were insufficient to establish deliberate indifference).

5

C. *Supervisory Claims*

Finally, to the extent Kornagay sues Defendants in their supervisory capacities, his Complaint fails to state a claim. A governmental entity can be held liable under § 1983 only if the injurious unlawful conduct constitutes an official policy or custom. *See generally Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Complaint cannot sustain a § 1983 claim under this theory because it lacks facts evidencing *any* policy or custom—much less a *relevant* policy or custom. *See Hossman v. Blunk*, 784 F.2d 793 (7th Cir. 1986); *see also Gutierrez v. City of Hialeah*, 723 F. Supp. 1494 (S.D. Fla. 1989).

V. **Conclusion**

For the reasons stated above, as well as the analysis provided in Judge White's Report and Recommendation, the Court finds that Kornagay has failed to state a claim upon which relief can be granted as to any of the Defendants. Furthermore, it is not even remotely plausible that Kornagay could revise the Complaint to overcome its glaring deficiencies and state a valid claim against Defendants. Therefore, allowing Kornagay to file an Amended Complaint would be futile. Accordingly, it is

**ADJUDGED** that the Complaint is DISMISSED without leave to amend. Final judgment is entered and this case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th of November 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Robert D. Kornagay, *Pro Se*
DC# J13805
Northwest Florida Reception Center – Annex
Inmate Mail/Parcels
4455 Sam Mitchell Drive
Chipley, FL 32428

6